### Mark TURLEY, Appellant (Plaintiff below),

v.

### Joseph T. HYTEN, Appellee (Plaintiff below).

### No. 79S04–0208–CV–421.

Supreme Court of Indiana.

Aug. 8, 2002.

James E. Ayers, Wernle, Ristine & Ayers, Crawfordsville, IN, Attorney for Appellant.

Ian A.T. McLean, Crawfordsville, IN, Attorney for Appellee.

## ON PETITION TO TRANSFER

SULLIVAN, Justice.

Mark Turley sued Joseph Hyten for extensive damage that Hyten caused to the house Turley had rented him. The trial court and Court of Appeals held that Hyten was entitled to a refund of his security deposit despite the damage he caused. We reverse, finding that Turley substantially and sufficiently complied with the security deposit statute so that he is not required to refund the security deposit.

*Background*

Mark Turley, the landlord, and Joseph Hyten, the tenant, entered into a one-year lease for a house located in Darlington, Indiana ("Darlington house"), for the period from May 1, 1995 to April 30, 1996. The Darlington house had previously been Turley's residence, and since 1995 Turley had rented the house to tenants. The lease provided for a security deposit of $450, and for monthly rental payments of $450 due at the beginning of each month.

Hyten resided in the Darlington house from May 1, 1995 until February, 1996.[1] On January 29, Hyten telephoned Turley and verbally informed Turley that Hyten would be vacating the Darlington house on January 31, 1996. Turley drove by the house several times between January 29 and January 31; at all times Turley noted that Hyten was still in residence. On February 3, 1996, Turley entered the premises and discovered the extensive plumbing and water damage caused by a window that Hyten had left open prior to vacating.

Turley commenced this action to recover for the damages, which totaled over $5,000. Hyten counter-claimed for his security deposit, along with other claims. Hyten moved for partial summary judgment on the security deposit claim, and this was granted on March 10, 2000. The trial court awarded Hyten the return of his security deposit, in addition to attorney's fees and costs. Turley appealed to the Court of Appeals and the Court of Appeals upheld the trial court's grant of summary judgment. *Turley v. Hyten*, 751 N.E.2d 249 (Ind.Ct.App.2001). We now grant transfer and reverse.

---

1. The date of Hyten's departure is unclear from the record, but was during the first three days of February.

*Discussion*

Turley contends that the Court of Appeals erred in upholding the trial court's grant of summary judgment. The Court of Appeals upheld the trial court's determination based on two findings: (1) Turley's notice to Hyten was insufficient, and (2) Turley was precluded from recovering "other damages" under Indiana Code § 32–7–5–15. *Turley*, 751 N.E.2d at 252–53. In this appeal, we need only address the first issue, whether Turley's notice to Hyten was sufficient, as this issue is dispositive.

In 1989, the Legislature passed the security deposit statute, Indiana Code § 32–7–5–1 through 32–7–5–19. The specific section relevant to this case is Indiana Code § 32–7–5–14, which provides:

> "In case of damage to the rental unit or other obligation against the security deposit, the landlord shall mail to the tenant, within forty-five (45) days after the termination of occupancy, an itemized list of damages claimed for which the security deposit may be used ... including the estimated cost of repair for each damaged item and the amounts and lease on which the landlord intends to assess the tenant."

We have not previously addressed the sufficiency of a landlord notice under this section. But the Court of Appeals has dealt with the requirements of the security deposit statute, and, more specifically, the notice requirement under Indiana Code § 32–7–5–14, on many different occasions. *See Pinnacle Properties v. Saulka*, 693 N.E.2d 101 (Ind.Ct.App.1998) (whether a "vacate report" was sufficient as an itemized damage notice required by the statute); *Figg v. Bryan Rental Inc.*, 646 N.E.2d 69 (Ind.Ct.App.1995) (whether merely referring to unpaid rent was a sufficiently itemized notice); *Meyers v. Langley*, 638 N.E.2d 875 (Ind.Ct.App.1994)

(whether general estimates of repair was sufficient itemization under the statute); *Duchon v. Ross*, 599 N.E.2d 621 (Ind.Ct.App.1992) (whether providing no estimated costs was sufficient notice).

From these cases, it is apparent that the Court of Appeals has created a strict compliance rule when it comes to the landlord's notice of damages. The Court of Appeals has counted the days to make sure the landlord's letter was sent within the prescribed forty-five day time period and the level of itemization by the landlord has been scrutinized with great care. *See Figg*, 646 N.E.2d at 71, 75; *Meyers*, 638 N.E.2d at 878. With the exception of the mention of "unpaid rent," the Court of Appeals has consistently found for the tenant where the landlord was not extremely careful to list each damaged item with a corresponding monetary amount. *Compare Figg*, 646 N.E.2d at 75 (unpaid rent sufficient) *with Saulka*, 693 N.E.2d at 104 (itemized vacate report which included a lump sum amount not sufficient).

When Hyten vacated the house in Darlington, he failed to tell Turley the exact date of his departure. Hyten had initially called Turley on January 29, 1996 and told Turley over the phone that Hyten would be vacating the Darlington house on January 31, 1996. When Turley inspected the Darlington house on January 31, he found Hyten to still be in residence. Turley returned to the house on February 3, 1996, and found that Hyten had vacated the house, but had caused major plumbing damage by leaving the window next to the thermostat open. In addition to the open window, the furnace thermostat had been set on high, and as such, the propane tank which fueled the furnace was empty. The condition in which Hyten left the house, along with the extremely cold weather conditions, caused the toilets and water pipes

to burst.[2] In order to make the house habitable, Turley had to replace the entire plumbing system.

Hyten had not failed to inform the gas company that he was vacating the Darlington house. Hyten had called early in the month of January to place the bill back in Turley's name effective January 16, 1996. But Hyten did not vacate the Darlington house until early February. Turley was alerted to a potential problem at the house by the water company. Due to the water damage to the pipes, carpeting and wall paint, Turley was unable to rent the Darlington house until March, 1996, and did not have a tenant for the house until May, 1996.

On February 16, 1996, Turley received a letter from Hyten asking for his security deposit of $450 to be returned. Hyten had also enclosed the keys to the Darlington house. Turley responded to Hyten's letter on February 25, 1996. It is this letter to which Hyten objects, arguing that the letter did not meet the requirements of Indiana Code § 32–7–5–14. The letter reads as follows:

> In response to your registered letter of February 7, 1996, this is notification to you regarding expenses chargeable to you under the terms of your lease.
>
> Pictures have been taken, and the Town Marshall was invited in to see the house in the condition you left it. You left behind trash and there are many holes in the wall to be patched before it can be painted. There is also damage to the building.
>
> When you called to say you were moving, you didn't tell us there was no heat in the house and all the pipes froze and burst. The damage to the carpet and floors is very bad. The toilet bowl

> burst, to name just a few of the problems. The house will have to be totally replumbed.
>
> The Water Company called and said you had told them early on in the month that you were moving and they put the billing back in our name. That is why they called to tell us something might be wrong because 24,000 gallons of water had gone through leaving "a pretty large bill for Mark to have to pay". Had you told us you were moving, perhaps this could have been avoided.
>
> All though we don't have a complete estimate yet, the damage is already more than $1400.00. After a complete assessment is made, we will give you a full itemized statement. It will also include lost rent due to our inability to lease the house again on a timely basis.

(R. at 58)

With respect to Turley's letter to Hyten, the Court of Appeals "acknowledge[d] that [Turley's] letter rather thoroughly identified various damaged items and stated that total damages exceeded $1,400...." But the court went on to find that Turley's letter failed to meet the requirements of Indiana Code § 32–7–5–14 because an estimated cost for each of the damaged items was not given. *Turley*, 751 N.E.2d at 252. The Court of Appeals stated that due to this, Hyten "was unable to discern whether the individual charges that comprised the $1,400 were proper or reasonable." *Id.*

Looking at the facts of this case, however, we reach the opposite result. We find that the discussion of the security deposit statute in *Meyers v. Langley* to be helpful.

---

**2.** Turley included in his affidavit, and attached newspaper records, the weather conditions for January 30–February 3, 1996. The average high for the five-day period was about 10 degrees and the average low was −1 degree.

In *Meyers*, the landlord had sent a notice letter to the former tenant with estimates of material and labor to fix the damages caused by the tenant. In holding that the letter was sufficient under § 32–7–5–14, the court stated, "[t]he purpose of the notice provision is to inform the tenant that the landlord is keeping the security deposit and for what reason. It provides the tenant an opportunity to challenge the costs for which the deposit is being used. That purpose has been served here." *Meyers*, 638 N.E.2d at 878–79.

Under the facts of this case, we find that Indiana Code § 32–7–5–14 has been complied with. We find that Turley fulfilled, in good faith and to the best of his ability under the circumstances with which he was presented, the purpose of the statute. Turley informed Hyten of the types of damages that Hyten had caused to the Darlington house. Turley also informed Hyten that due to the extensive nature of the damages, Turley did not have a complete estimate of the total amounts each of the repairs would cost.

Turley's February 25 letter gave Hyten more than enough information with which to contest the costs to which his security deposit was being applied. Hyten's security deposit was a mere $450, whereas Turley alleged that the repairs, as of February 25, 1996, would amount to more than $1400. In addition, Turley alleged in the February 25 letter that Turley would hold Hyten responsible for lost rent due to Turley's inability to lease the Darlington house in a timely fashion. Under the lease between Turley and Hyten, one month's rent was equal to the security deposit paid by Hyten at the beginning of the lease.

Under facts such as these, the purpose of the security deposit statute has been served.

## Conclusion

We grant transfer and reverse the trial court's grant of partial summary judgment for Hyten. We remand for proceedings consistent with this opinion.

SHEPARD, C.J., and BOEHM, J., concur.

RUCKER, J. dissents with separate opinion, in which DICKSON, J. concurs.

RUCKER, Justice, dissenting.

I respectfully dissent. The majority chastises the Court of Appeals for what it describes as "creat[ing] a strict compliance rule when it comes to the landlord's notice of damages." Op. at 995. In my view the Court of Appeals has done no such thing. Rather, the court has merely applied long-standing rules of statutory interpretation in reaching its decisions.

The very first step in statutory interpretation is to determine whether the legislature has spoken clearly and unambiguously on the point in question. *Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc.*, 746 N.E.2d 941, 947 (Ind.2001). "When a statute is clear and unambiguous, we need not apply any rules of construction other than to require that words and phrases be taken in their plain, ordinary, and usual sense. Clear and unambiguous statutory meaning leaves no room for judicial construction." *Poehlman v. Feferman*, 717 N.E.2d 578, 581 (Ind.1999) (citation omitted).

The security deposit statute provides in relevant part:

> In case of damage to the rental unit or other obligation against the security deposit, the landlord **shall** mail to the tenant, within forty-five (45) days after the termination of occupancy, an itemized list of damages claimed for which the security deposit may be used as

provided in section 13 of this chapter, including the estimated cost for each damaged item and the amounts and lease on which the landlord intends to assess the tenant.

Ind.Code § 32–7–5–14[1] (emphasis added). This statute is clear, unequivocal, and could not be any more unambiguous: "the landlord shall. . . ." We have consistently construed "shall" as obligatory. "When the word 'shall' appears in a statute, it is construed as mandatory rather than directory unless it appears clear from the context or the purpose of the statute that the legislature intended a different meaning." *United Rural Elec. Membership Corp. v. Ind. & Mich. Elec. Co.,* 549 N.E.2d 1019, 1022 (Ind.1990); *accord Indiana Civil Rights Comm'n v. Indianapolis Newspapers, Inc.,* 716 N.E.2d 943, 947 (Ind.1999); *State ex rel. City of Indianapolis v. Brennan,* 231 Ind. 492, 109 N.E.2d 409, 411 (1952).

It is clear to me that the plain language of the statute mandates the landlord to provide an itemized list including the estimated cost of repair for each damaged item within forty-five days. As the Court of Appeals has previously observed, "[t]he notice provision does not impose a difficult burden on the landlord." *Pinnacle Props. v. Saulka,* 693 N.E.2d 101, 104 (Ind.Ct. App.1998), *trans. denied.* I agree and would insist that the landlord do what our legislature said it must do. In this case, Mr. Turley failed in his obligation to com-

ply with the statute. I therefore dissent and would affirm the trial court.

DICKSON, J., concurs.

---

**1.** Repealed by Pub.L. No. 2–2002, § 128, effective July 1, 2002. For a similar provision, see Indiana Code section 32–31–3–14, which provides:

Not more than forty-five (45) days after the termination of occupancy, a landlord shall mail to a tenant an itemized list of damages claimed for which the security deposit may be used under section 13 [I.C. § 32–31–3–13] of this chapter. The list must set forth:

(1) the estimated cost of repair for each damaged item; and

(2) the amounts and lease on which the landlord intends to assess the tenant. The landlord shall include with the list a check or money order for the difference between the damages claimed and the amount of the security deposit held by the landlord.